**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
SATISFACTION FULFILLED LTD. and     :
PEERMUSIC (UK) LTD.,                :   Case No. _____
                                    :
           Plaintiffs,              :   **COMPLAINT**
                                    :
     -against-                      :   **JURY DEMAND**
                                    :
SONY MUSIC PUBLISHING LLC,          :
                                    :
           Defendant.               :
-------------------------------------------------------X

Plaintiffs Satisfaction Fulfilled Ltd. and Peermusic (UK) Ltd., for their complaint (the "Complaint") against defendant Sony Music Publishing LLC, allege as follows:

### NATURE OF THE ACTION

1.      Plaintiffs Satisfaction Fulfilled Ltd. ("SFL"), which owns the copyrights to musical works by the late musician and songwriter Malcom McLaren ("McLaren"), and Peermusic (UK) Ltd. ("Peer"), the exclusive administrator of those copyrights (together, "Peer/SFL" or "Plaintiffs"), bring this action against Sony Music Publishing LLC ("Sony" or "Defendant") to confirm Peer/SFL's 25% interest in the musical work "Hey D.J.," co-authored by McLaren and sampled by recording artist Lizzo in the song "About Damn Time," as well as Peer/SFL's 8.335% interest in the resulting Lizzo work.  Rather than acknowledge McLaren as one of the four authors of the sampled music, Sony has deliberately misrepresented the authorship and ownership of the music used by Lizzo in order to usurp Peer/SFL's licensing opportunity and divert the benefits and proceeds of Lizzo's agreed sample license with Peer/SFL to itself.

## JURISDICTION AND VENUE

2.  This is an action for declaratory relief brought under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.* ("Copyright Act"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. In addition to a seeking a declaratory judgment of copyright ownership, Plaintiffs seek an accounting for lost income under federal copyright law and New York common law, as well as to recover damages for tortious interference with contract and tortious interference with business relations in violation of New York common law.

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright) because Plaintiffs' declaratory judgment and accounting claims depend upon resolution of questions of federal law that arise under the Copyright Act. Federal courts have exclusive jurisdiction of matters arising under the Copyright Act. 28 U.S.C. § 1338(a). In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) (supplemental jurisdiction) because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. The Court also has subject matter jurisdiction over the foregoing claims pursuant to 28 U.S.C. § 1332 because Sony is a U.S. citizen, both Plaintiffs are citizens of a foreign state, and the amount in controversy exceeds $75,000.

4.  This Court has personal jurisdiction over Sony because it has its principal place of business in this District and because a substantial part of the events or omissions by Sony giving rise to the claims occurred in this District.

5.  Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because Sony resides in this district and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

6. Plaintiff Satisfaction Fulfilled Ltd. is a U.K. private limited company with its principal place of business at 3 Royal Crescent, Cheltenham, Gloucestershire, United Kingdom, GL50 3DA.  SFL is the successor in interest to, and current owner of, McLaren's music publishing interests, including his copyright interest in "Hey D.J."

7. Plaintiff Peermusic (UK) Ltd. is a U.K. private limited company with its principal place of business at Greyhound House, 23/24 George Street, Richmond Upon Thames, England, TW9 1H.  Peer is the exclusive administrator of McLaren's music publishing interests.

8. On information and belief, Sony Music Publishing LLC is a limited liability company organized under the laws of Delaware, with its principal place of business at 25 Madison Avenue, 24th Floor, New York, New York 10010.

## FACTUAL ALLEGATIONS

**McLaren's Authorship of "Hey D.J."**

9. McLaren was a visionary creator and impresario responsible for the success of the 1970s and 80s bands the New York Dolls, Sex Pistols and Bow Wow Wow.  Following these successes, McLaren became a musical artist in his own right and was signed by Charisma Records (later Virgin Records) (together, "Virgin") to create his first solo album.  The solo album, which was conceived and executed by McLaren, was the groundbreaking *Duck Rock*.

10. In the early 1980s, McLaren, who had turned his attention to the nascent hip hop scene, met two New York DJs who hosted a local radio show, Larry Price a/k/a Sedivine the Mastermind ("Price") and Ronald Larkins Jr. a/k/a Just Allah the Superstar ("Larkins").  McLaren invited Price and Larkins, together known as the World's Famous Supreme Team ("World's Famous"), to perform on *Duck Rock*.  *Duck Rock* was one of the first records to feature hip hop music.  McLaren not only oversaw the production of and performed on *Duck*

*Rock*, but co-authored all of the musical works on the critically acclaimed album. *Duck Rock*, which spawned the hit songs "Buffalo Gals" and "Double Dutch," was released by Virgin in 1983.

11. Not all of the material McLaren created and recorded for *Duck Rock* was used on the album. In an effort to generate additional value from the leftover recordings of a successful album, Virgin arranged for a producer, Stephen Hague ("Hague"), to work with McLaren to create additional tracks from the unused material. Among the tracks produced by Hague in this capacity was another early hip hop hit, "Hey D.J." ("HDJ").

12. HDJ, featuring the World's Famous duo, was released by Virgin in 1984 in both standard length and extended play versions. The track consists of instrumental music and accompanying lyrics rapped and sung by World's Famous and other performers. The music and lyrics for HDJ were jointly authored by McLaren, Hague, Price and Larkins.

13. In keeping with McLaren's appreciation for hip hop, HDJ showcased World's Famous' rapped performances. Hague produced both an extended version of the track, roughly 6 minutes long, which was released on a 12-inch disc; and a shorter version, roughly 4 minutes long and released on a 45-rpm record. These so-called "vocal" versions were the "A sides" of the physical records on which they appeared and the versions that were promoted and played on radio and by DJs—in other words, the "hit" versions.

14. The musical work (*i.e.*, composition) embodied in the extended vocal version of HDJ was registered with the U.S. Copyright Office, registration no. PA 216-035. The registration lists McLaren as a joint author of the work, crediting him for both words and music, along with Hague, Price and Larkins.

15.     Under basic rules of copyright, as one of four joint authors of HDJ, McLaren was vested with a 25% interest in the whole of the work—that is, all of the instrumental music and all of the lyrics—and not merely the specific portions he happened to contribute to the work.

16.     After completing production of the primary "vocal" version of HDJ, Hague produced a roughly 6-minute "extended instrumental" version to fill the "B side" of the 12-inch record, and a roughly 4-minute "instrumental" version of HDJ for the B side of the 45-rpm record.

17.     As per standard industry practice, the B side instrumental versions of HDJ were created from the fully produced A side vocal version.  Hague stripped out many (though not all) of the rapped lyrics from the vocal version, leaving the instrumental music in place.  Thus, the instrumental music, including the melody, on the B side version of HDJ is the same as the instrumental music and melody on the A side from which it was derived.

18.     The musical work comprising the extended instrumental version of HDJ is registered with the U.S. Copyright Office, registration no. PA 216-034.  Unlike the registration for the original vocal version, the instrumental registration does not list McLaren as a co-author of the instrumental derivative.  Even if the registration was validly obtained (which is questionable, as the underlying work on which it was based should have been disclaimed in the registration process), the instrumental registration would be extremely limited because, as a matter of copyright law, it excludes all music and lyrics present in the original vocal version of HDJ.  That is, it would encompass only newly added authorship by Hague, Price and Larkins, if any.  The instrumental registration would not (and does not) include the musical excerpt sampled by Lizzo, because the excerpt sampled by Lizzo appears in the earlier created vocal version of the work.  17 U.S.C. § 103(b).

19. In sum, the registration for the instrumental version of HDJ does not extend to any of the material in the original vocal version of HDJ, including the instrumental music or particular melodic phrase used by Lizzo. *Id.* These preexisting elements were co-created by McLaren as one of four joint authors of the vocal version. McLaren's 25% interest in this material is owned and administered by Peer/SFL, not Sony.

**The Lizzo Sample License**

20. On February 14, 2022, Alien Music Services ("Alien"), a music clearance company acting on behalf of Atlantic recording artist Lizzo, reached out to Peer as administrator of the McLaren catalog to solicit a quote for Lizzo's use of a sample of HDJ in the song "About That Time" (later changed to "About Damn Time"). The request identified McLaren as an author of the work for which the license was sought, along with Hague, Price and Larkins. Alien explained that the sample was an "interpolation," meaning that Lizzo would be using an excerpt of the musical work co-authored by McLaren but not Virgin's recording of that work.

21. Alien also approached Sony with the request because the other three writers of HDJ—Hague, Price and Larkins—are all affiliated with Sony.

22. Notably, the request by Lizzo was analogous to a previous one by Mariah Carey ("Carey") for use of the same musical phrase from HDJ in Carey's song "Honey," released in 1997. Sony did not object to including the McLaren interest in the Carey sample license. A pro rata share of the "Honey" license fee went to McLaren, who is credited as a co-writer of "Honey," and Peer/SFL continues to issue licenses and collect license fees for that use.

23. On February 18, 2022, Peer sent an email to Alien advising that the proposed sample use had been approved by McLaren's estate (*i.e.*, SFL). The email further noted that Peer/SFL was amenable to issuing a license on the basis of receiving a 25% copyright interest in

the forthcoming Lizzo work, subject to a "most favored nations" term ("MFN") (meaning that if another publisher secured greater consideration, that would be matched for Peer/SFL).

24. On March 29, 2022, Peer sent Alien a formal letter stating that it was agreeable to licensing the McLaren interest in exchange for a pro rata share (among other co-writers of HDJ) of a 25% copyright ownership interest in the new Lizzo composition and a pro rata share (among other co-writers) of a $5,000 nonrecoupable fee, subject to an MFN with other publishers. Peer enclosed an invoice for Peer's 25% share of the $5,000 licensing fee (*i.e*., $1,250) with its response.

25. The Lizzo track "About Damn Time" was released on or about April 14, 2022 by Atlantic Records. McLaren, along with Hague, Price, Larkins, Lizzo and others, is publicly credited as a writer of the track.

26. "About Damn Time" quickly became a huge hit, debuting at number 50 on the *Billboard* "Hot 100" chart during the week of April 30th and later rising to the number one spot.

27. On May 9, 2022, Alien formally accepted Peer's licensing offer, transmitting a "Sample License Publishing Use Confirmation Letter" to Peer with the re line: "'Hey DJ' (the 'Interpolated Composition') written by Ronald Larkins, Larry Price[,] Malcolm McLaren, Stephen Hague, as used in 'About Damn Time' (the 'New Composition') performed by Lizzo" ("Confirmation Letter").

28. The Confirmation Letter "confirm[ed] the material terms" of the licensing agreement with Peer and provided that Peer would receive a $2,500 non-recoupable fee (not subject to pro rata reduction, as this was Peer's share) and a "pro-rata 33.34% (i.e. 8.335%) interest in the new composition." On information and belief, Peer's share of the fee and pro rata ownership share were increased in keeping with the MFN condition in Peer's offer letter. The 8.335% interest confirmed by Alien to Peer represented 25% of the 33.34% copyright ownership

7

interest in "About Damn Time" to be transferred to copyright owners representing the four authors of HDJ. The Confirmation Letter further stated that it was a "binding agreement" that permitted Lizzo "[to] proceed in reliance on the terms set forth [t]herein."

29. Almost immediately after Peer received the Confirmation Letter, Alien emailed Peer to say it was "retracting [the license] request" as "Sony is claiming 100% of the publishing on this as there is an instrumental only version." Tellingly, even though Sony had had months to review the details of the request, its 100% claim was not asserted until May 9, 2022, about a week after "About Damn Time" hit the *Billboard* Hot 100 chart.

30. On information and belief, Sony had never before questioned, let alone negated or repudiated, McLaren's authorship of, or Peer/SFL's ownership or control of, the music at issue.

31. On or about May 17, 2022, Peer emailed Alien to advise that it was maintaining its 25% claim to the HDJ sample, explaining that it "reject[ed] any claim by Sony which would exclude us from copyright ownership of any derivative works of 'HEY DJ.'" Alien responded that Peer would need to discuss the issue with Sony.

32. Over the next nine months, Peer wrote representatives of Sony repeatedly to object to Sony's actions and explain why, under copyright law, Sony was wrong to exclude the McLaren interest from the Lizzo sample license. Sony failed to provide a substantive response or defense for its actions.

33. In February 2023, outside counsel for Peer sent a letter to Sony, and then spoke with Sony's outside counsel, reiterating the reasons why Sony had no basis under copyright law to exclude Peer/SFL's interest from the license. Instead of retracting its claim, Sony doubled down on its specious assertion that the sample was taken from the instrumental version, ignoring the fact that the same instrumental music—including the melodic phrase sampled by Lizzo—is

contained in the vocal version co-authored by McLaren from which the instrumental version was derived.

34.     Outside counsel for Peer additionally pointed out that Sony's unfounded claim was interfering with the licensing of the Lizzo track for synch and other uses, as potential licensees were unsure about the proper parties from which to obtain a license.  In order to reassure licensees and facilitate licensing—and mitigate the impact of Sony's harmful actions—counsel for Peer suggested that Sony agree that Peer could grant licenses for the McLaren share and hold resulting royalties in a separate account pending resolution of the matter as between Sony and Peer.  Sony flatly refused this request.

35.     Sony has thus prevented Peer/SFL from receiving its share of Lizzo licensing fees and from acquiring its promised 8.335% copyright ownership interest in the extremely successful Lizzo track.  Relying on an unsupportable rationale that is inconsistent with copyright law, Sony usurped those opportunities for itself.

36.     Sony's refusal to relinquish its misguided claim has prevented distribution of hundreds of thousands of dollars in royalties due to Peer/SFL from various licensing entities, including ASCAP and the Mechanical Licensing Collective.  These entities have no choice but to hold these royalties so long as Sony persists in its claim.

37.     In yet another maneuver to divert Peer/SFL licensing fees to itself, on information and belief, Sony in the last few months registered the B Side instrumental version of HDJ with the U.K. performing rights society PRS for Music, some four decades after it was released.

38.     Sony's indefensible actions in denying McLaren's authorship of, and Peer/SFL's exclusive rights in, the music sampled by Lizzo; in interfering with and causing Alien to cancel a license agreement with Peer; in usurping Peer/SFL's licensing opportunity and ownership

interest in the Lizzo track for itself; and in diverting to itself licensing proceeds generated by the Lizzo track that belong to Peer/SFL, have harmed and continue to harm Peer/SFL.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

39.  Plaintiffs hereby incorporate by reference paragraphs 1 through 38 above as if fully set forth herein.

40.  There exists an actual and justiciable controversy between Plaintiffs and Sony with respect to the copyright ownership of HDJ, including the music sampled from HDJ by Lizzo in the track "About Damn Time"; Plaintiffs' entitlement to license fees and other consideration for that use; and SFL's ownership of an 8.335% copyright interest in the musical work "About Damn Time" currently claimed by Sony.

41.  Sony's actions in refusing to acknowledge Plaintiffs' ownership and control of the McLaren copyright interest in the vocal and instrumental versions of HDJ are willful and lack reasonable justification.

42.  A prompt and immediate judicial determination of the rights and duties of the parties is presently ripe, useful and necessary. Sony has repeatedly refused to recognize Plaintiffs' rights and shown no willingness or intent to alter its unjustified, willful behavior, which has deprived and continues to deprive Plaintiffs of the ability to issue licenses and receive payment and other consideration in connection with Lizzo's use of HDJ, and potentially in connection with other uses of HDJ as well.

43.  Sony's refusal to acknowledge Plaintiffs' copyright interests in HDJ has caused and, unless enjoined by the Court, will continue to cause, Plaintiffs irreparable harm for which there is no adequate remedy at law.

44. Under the U.S. Copyright Act, 17 U.S.C. § 505, Plaintiffs are entitled to recover their attorneys' fees and the full costs of this action as a result of Sony's unjustified and willful violation of their exclusive rights under the Copyright Act.

## SECOND CAUSE OF ACTION
(Accounting)

45. Plaintiffs hereby incorporate by reference paragraphs 1 through 44 above as if fully set forth herein.

46. Under the U.S. Copyright Act, 17 U.S.C. § 101, McLaren, as one of four co-creators of HDJ, was a joint author of the musical work HDJ, vested with a 25% undivided copyright interest in the entirety of the work, which interest is now owned by SFL and exclusively administered by Peer.

47. On information and belief, Sony is the co-owner of the copyright interests of McLaren's three co-authors, Hague, Price and Larkins in the musical work HDJ.

48. Under principles of U.S. copyright law, as well as New York common law, Sony, as a joint owner of HDJ, has a duty to account to Plaintiffs for its exploitation of SFL's 25% share of HDJ, and to pay over and convey to Plaintiffs 25% of all monies and other consideration Sony has received for such exploitation.

49. Sony has exclusive knowledge, possession and control of the books, records and other information concerning its exploitation of SFL's 25% share of HDJ, as well as the monies and other consideration received by Sony for same.

50. Notwithstanding Plaintiffs' repeated objections to Sony's conduct, Sony has failed to account to Peer and/or SFL for its exploitation of SFL's 25% share of HDJ, or to pay or convey to Peer and/or SFL the monies and other consideration received by Sony for such exploitation.

51. Absent an accounting by Sony, Plaintiffs will have no way of determining or recovering the monies and other consideration due to Plaintiffs from Sony's exploitation of SFL's 25% copyright interest in HDJ. As a co-owner of HDJ, a joint work, SFL is entitled to ascertain and recover that amount, as is Peer, the exclusive administrator of SFL's joint interest.

### THIRD CAUSE OF ACTION
**(Tortious Interference with Contract)**

52. Plaintiffs hereby incorporate by reference paragraphs 1 through 51 above as if fully set forth herein.

53. Upon being solicited by Alien, Peer/SFL offered to license an excerpt of HDJ for a sample use by Lizzo according to certain terms. Alien accepted Peer/SFL's offer and sent Peer a letter confirming the terms of the licensing agreement. Peer/SFL thus entered into a valid agreement with Alien.

54. Sony was fully aware of Peer/SFL's agreement with Alien.

55. Sony intentionally asserted a false copyright ownership claim for HDJ that caused Alien to breach its agreement with Peer/SFL.

56. Sony's actions in procuring the breach of Alien's contract with Peer/SFL were without legal or factual justification, were committed intentionally and with malice, and violated Plaintiffs' exclusive rights under the U.S. Copyright Act.

57. As a result of Sony's actions, Plaintiffs suffered damages by being deprived of the consideration and benefits of their agreement with Alien to issue a sample license to Lizzo.

### FOURTH CAUSE OF ACTION
**(Tortious Interference with Business Relations)**

58. Plaintiffs hereby incorporate by reference paragraphs 1 through 57 above as if fully set forth herein.

59. Upon being solicited by Alien, Peer/SFL offered to license an excerpt of HDJ for a sample use by Lizzo according to certain terms. Alien accepted Peer/SFL's offer and sent Peer a letter confirming the terms of the licensing agreement. Peer/SFL thus had an opportunity and expected to enter into a business relationship with Alien.

60. Sony was fully aware of Peer/SFL's prospective business relationship with Alien.

61. Sony intentionally and maliciously interfered with Plaintiffs' prospective business relationship with Alien for the sole purpose of harming Plaintiffs by unlawfully and improperly usurping the Lizzo license opportunity and related consideration for itself and by violating Plaintiffs' rights under the U.S. Copyright Act.

62. But for Sony's actions, Plaintiffs would have established such business relationship with Alien.

63. As a result of Sony's actions, Plaintiffs suffered damages by being deprived of the consideration and benefits of their agreement with Alien to issue a sample license to Lizzo.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

(a) Declaring that

(i) McLaren is a joint author of all music and lyrics in the "extended vocal version" of the musical work "Hey D.J.," U.S. copyright registration no. PA 216-035 ("HDJV");

(ii) McLaren is a joint author of all music and lyrics in the "extended instrumental vocal version" of the musical work "Hey D.J." ("HDJI"), U.S. copyright registration no. PA 216-034, except for any original authorship (if any) in HDJI not present in HDJV (McLaren's authorship interests in HDJV and HDJI together, the "McLaren Interests");

(iii) SFL is the copyright owner of the McLaren Interests;

(iv) Peer is the exclusive administrator of the McLaren Interests;

  (v) SFL owns 25% of the 33.34% copyright interest in the musical work "About Damn Time" that is currently wrongfully claimed by Sony (the "McLaren Sample Interest"); and

  (vi) Peer is the exclusive administrator of the McLaren Sample Interest;

(b) For an injunction permanently enjoining Sony (including its agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert with them) from engaging in any action that contradicts or undermines SFL and/or Peer's rights and/or interests as set forth in (a) above, including SFL and Peer's right to collect licensing fees, monies and/or other consideration in connection with same;

(c) For Sony promptly to account to SFL and Peer for all licensing fees, monies and other consideration received, collected or generated in connection with the Lizzo's sample use of "Hey D.J." in the musical work "About Damn Time" (collectively, "Lizzo Sample Earnings"), and promptly pay over to Peer 25% of all such Lizzo Sample Earnings;

(d) Holding Sony liable for tortious interference with contract and/or tortious interference with business relations;

(e) Finding Sony's actions in violation of Plaintiffs' copyright and economic interests to be without justification and willful;

(f) Awarding actual damages in an amount to be determined at trial;

(g) Awarding compensatory and punitive damages, and any other damages available under applicable law;

(h) Awarding prejudgment and post-judgment interest according to law;

(i) Awarding Plaintiffs their full costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505; and

(j) Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action on all issues so triable.

Dated: New York, New York
April 21, 2023

CHARLESWORTH LAW

By: /s/ *Jacqueline C. Charlesworth*
Jacqueline C. Charlesworth

15671 Royal Ridge Road
Sherman Oaks, California 91405
Tel.: (917) 432-7343
jacqueline@charlesworthlaw.com

Craig B. Whitney
FRANKFURT KURNIT KLEIN & SELZ, P.C.
28 Liberty Street
New York, New York 10005
Tel.: (212) 980-0120
Fax: (212) 593-9175
cwhitney@fkks.com

*Attorneys for Plaintiffs*